IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY T. GREENE,

                           Petitioner,

     v.

WILLIAM POLLARD, Warden,
Green Bay Correctional Institution,

                           Respondent.

REPORT AND
RECOMMENDATION

08-cv-623-slc

---

REPORT

Before the court for report and recommendation is Jeremy Greene's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Greene is serving a life sentence at the Green Bay Correctional Institution as a result of his 2002 conviction in the Circuit Court for Dane County on charges of first-degree intentional homicide, armed robbery and armed burglary, all arising from the same home invasion. For the reasons stated below, I am recommending that this court deny Greene's petition and dismiss this case.

Greene raises 10 claims in support of his petition:

1) The prosecutor failed to offer a valid, race-neutral reason for using a peremptory strike to remove the sole African-American person from the jury, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986);

2) One of the jurors was biased because he had read articles containing prejudicial information about petitioner;

3) Petitioner was denied equal protection of the laws because the jury pool, which contained only one African-American, did not represent a fair cross-section of the community;

4) The prosecutor deprived petitioner of a fair trial when she made improper comments about petitioner's invocation of his right to remain silent;

5) The prosecutor improperly introduced statements made by petitioner's co-defendants, "causing severance issues;"

6) Co-defendant's defense became antagonistic mid-trial due to comments made by her counsel about DNA evidence;

7) Trial counsel was ineffective for failing to object to these errors;

8) Trial counsel was ineffective for failing to present a valid theory in support of petitioner's request for lesser-included instructions on reckless homicide and felony murder;

9) Appellate counsel was ineffective for failing to bring a post-conviction motion challenging trial counsel's effectiveness and for failing to raise the *Batson*, jury pool, biased jury, prosecutorial misconduct and severance issues on appeal; and

10) The trial court improperly denied petitioner's request for lesser-included instructions on reckless homicide and felony murder.

As discussed below, petitioner has procedurally defaulted the following claims because he failed to present them properly in the state courts and has not shown that he meets one of the exceptions to the default rule: Claims 1 through 7; the portion of Claim 8 addressing the lack of a reckless homicide instruction; the portions of Claim 9 addressing the jury pool and biased jurors; and Claim 10.

What remains are portions of Claim 8 (trial counsel ineffective for not presenting valid theory for felony murder jury instruction) and Claim 9 (appellate counsel ineffective for failing to appeal *Batson*, Fifth Amendment and severance issues). Because the state courts did not unreasonably apply clearly established federal law or make unreasonable determinations of fact with regard to any of these claims, petitioner is not entitled to federal habeas relief.

From the state court record I draw these facts:

## FACTS

Petitioner and his accomplices, Corey Ellis, Genevieve Pauser and Lindsey Kopp, were charged in the Circuit Court for Dane County, Wisconsin, with first-degree intentional homicide,

armed burglary and armed robbery with threat of force in the February 19, 2001 stabbing death of Kyle Hachmeister in Madison.  Kopp and Ellis pled out to lesser charges in exchange for their testimony against petitioner and Pauser.  At a December 27, 2001 motion hearing  petitioner argued that he should be tried separately from Pauser because Pauser's testimony was essential to his alibi defense.  If he and Pauser were tried jointly, Pauser could invoke her Fifth Amendment privilege and not testify at all.  Petitioner argued that it was more likely that Pauser would waive her privilege at a separate and subsequent trial of petitioner.  Dkt. 17, Exh. G at 3-4.  The trial court denied petitioner's motion, finding that it was likely that Pauser would testify in her own defense.  The court noted that it could sever the trial later if it became apparent that Pauser was going to invoke her Fifth Amendment right.  *Id.* at 42-43.

## I.  Jury Selection and Trial

Petitioner and Pauser proceeded to trial on January 7, 2002.  During voir dire, one venire person, Mr. Mollenhoff, stated that a "[n]ewspaper article that I recall reading caused me totally [*sic*] that the parties who perpetrated the crime were guilty."  Dkt. 17, Exh. H at 51-52.  Upon further questioning by the court, Mollenhoff stated that he could put what he had read out of his mind, base his decision on the evidence presented at trial and give both defendants the benefit of the presumption of innocence.  Although both defense attorneys questioned Mollenhoff, neither asked the court to strike him for cause.  *Id.* at 52-57.

Also during voir dire, one venire person stated that she had been charged with an OWI three and a half years prior but had resolved the incident on an uncontested basis.  Another venire person said that his brother was serving prison time on a drug charge.  The court excused them

3

both for cause.  *Id.* at 84-88.  Venire person Josephine Anderson-Ingram stated on her juror information card that her husband was incarcerated.  Further questioning revealed that the husband had been convicted of robbery in Dane County in 1991.  Anderson-Ingram stated that she could be fair and impartial.  *Id.* at 100-01.

The prosecutor later announced that he intended to exercise a peremptory strike with respect to Anderson-Ingram.  Because the juror was the only African American person on the panel, both defense attorneys challenged this strike pursuant to *Batson v. Kentucky* [476 U.S. 79 (1986)].  The prosecutor explained that he wished to strike the juror because she had been tardy returning to the courtroom after a break in the voir dire, she was potentially biased against the Dane County District Attorney's Office given her husband's incarceration, and she failed to state that her husband had been convicted of three armed robberies and one attempted armed robbery. The trial court stated that although it did not find Anderson-Ingram to be untruthful, it did not "see anything racial in the motivation" and found that the prosecutor had a race-neutral reason for striking her.  *Id.* at 117-28.

At trial, Ellis testified that he, petitioner and two others planned to rob Hachmeister. According to Ellis, the four went to Hachmeister's house where Ellis and petitioner broke in and entered the bedroom.  Kopp and Pauser remained in the car.  Ellis testified that he grabbed Hachmeister's backpack and left through a window, leaving petitioner inside the bedroom.  Kopp testified that Ellis returned to the car alone with the backpack.  Kopp and Ellis both testified that petitioner returned to the car about a minute later with a knife and announced that he had stabbed Hachmeister seven times.  Kopp testified that she saw blood on the knife.

Petitioner presented an alibi defense and attacked the credibility of Ellis and Kopp. Dkt. 1, Exh. 5; dkt. 12, Exh. E.

The prosecution introduced into evidence portions of a transcript of telephone conversations between Pauser and her mother during February 2001 while Pauser was in jail. Pauser's statements were self-incriminating but she did not refer to petitioner by name in any of those conversations. During one call, Pauser referred to "someone snitching out the four of us." Dkt. 17, Exh. L at 202. At trial, Pauser testified on her own behalf and helped corroborate petitioner's alibi. *Id.*, Exh. M.

During closing arguments, one of the prosecutors stated that petitioner had told Kopp "'If you open your mouth, that's how people find out.' And that's been his attitude the entire time." Dkt. 17, Exh. O at 112-13. During rebuttal, the second prosecutor discussed Ellis's credibility and stated "[Ellis] chose not to stand on his rights to remain silent and just make the State or the police find the evidence and the State ultimately convict him." *Id.* at 198. Petitioner's attorney objected and the court instructed the jury that "there is to be no inference of a person's right to remain silent at any time in a criminal proceeding." *Id.*

During the jury instruction conference, petitioner requested an instruction for first degree reckless homicide and felony murder, both as lesser included crimes of first degree intentional homicide. The trial court denied those requests, reasoning that the nature and number of stab wounds demonstrated "compelling evidence that whoever did it acted with an intent to kill or with the state of mind that their conduct was practically certain to cause death. . . If there is a reasonable ground to acquit Mr. Greene of first degree intentional homicide, it lies in the alibi, not the absence of intent." Dkt. 12, Exh. E at ¶ 3.

During deliberations, the jury asked to have reread the transcript of Pauser's telephone calls.  Dkt. 17, Exh. P at 6-19, 22-26.  On January 14, 2002, the jury found petitioner guilty of first degree intentional homicide with a dangerous weapon, Wis. Stat. §§ 940.01(1)(a) and 939.63(1)(a)(2); armed burglary with a dangerous weapon, Wis. Stat. § 943.10(2)(a); and armed robbery with threat of force, Wis. Stat. § 943.32(2), all as a party to the crime and as a habitual offender.  Dkt. 12, Exh. A.  Although the trial court had granted Pauser's request for a jury instruction on felony murder, the jury found her guilty of first degree intentional homicide.  *See* Dkt. 1, Exh. 5 at 2.

Petitioner's appellate attorney, Robert Ruth, sent petitioner a seven-page letter explaining why he was willing to raise the jury instruction issue but not a set of other issues.  Ruth reasoned that: 1) the state had a race-neutral reason for striking the African American juror, whose husband was currently serving a sentence on an offense prosecuted by the Dane County District Attorney's office; 2) the prosecutor's comment on petitioner's exercise of his right to remain silent would be·viewed as harmless error given its brevity and the court's immediate curative instruction; and 3) there was no constitutional confrontation problem requiring severance because all of the co-defendants had testified and had been available to be cross-examined.  *See* Dkt. 13, Exh. 6 at 3.

## II.  Direct Appeal

On June 23, 2003, petitioner appealed his conviction, arguing that the trial court erred when it refused to instruct the jury that felony murder is a lesser-included offense to homicide.  Dkt. 12, Exh. B.  Petitioner asserted that even if he participated in the robbery, it was Ellis, acting alone, who stabbed Hachmeister.  On January 29, 2004, the Wisconsin Court of Appeals affirmed

6

petitioner's conviction, finding that petitioner had waived his argument because he had not presented it to the trial court. *State v. Greene*, no. 03-635-CR, dkt. 1, exh. 3 at ¶ 5 (citing *State v. Rogers*, 196 Wis. 2d 817, 827-29, 539 N.W.2d 897 (Ct. App. 1995)).  The court noted that petitioner had argued in the trial court for a felony murder instruction solely on the ground that the jury could not find that he had the intent to kill Hachmeister.  The Wisconsin Supreme Court denied the petition for review on June 8, 2004.  Dkt. 1, Exh. 4.

### III.  § 974.06 Motion

In 2004, petitioner filed a pro se motion for § 974.06 relief, alleging that his trial attorney, David Geier, had been ineffective for failing to argue to the court that it should instruct the jury on the lesser-included offense of felony murder since the evidence showed that petitioner only participated in the armed robbery and did not murder Hachmeister.  Petitioner  also alleged that appellate attorney Ruth had been equally ineffective for not having raised this issue on direct appeal.

On October 6, 2004, the trial court found without a hearing that petitioner had failed to show that he had been prejudiced by his trial or appellate attorney's alleged errors because there was no chance that the jury would have found petitioner guilty of felony murder instead of homicide.  The court recounted Ellis's trial testimony that Pauser remained in the car while Ellis and petitioner entered the victim's home and that petitioner had admitted to Ellis that he had stabbed Hachmeister.  The trial court further noted that although it had granted Pauser's request for a felony murder instruction, the jury nonetheless  had convicted her of first degree intentional homicide.  Dkt. 1, Exh. 5.

7

Petitioner appealed, arguing that Geier had been ineffective and that the trial court erred by not giving a felony murder instruction and by not allowing Geier to raise an alternative argument in support of that instruction. On March 29, 2007, the court of appeals affirmed the lower court's decision. It found that the court had not precluded trial counsel from raising alternative arguments and again noting that petitioner had waived his argument that the trial court erred by not giving the instruction. Applying *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the court determined that petitioner could not show that any errors committed by his attorneys had prejudiced him because the evidence failed to establish that the trial court would have granted the instruction in response to any argument. Dkt. 1, Exh. 6.

The appellate court noted that a lesser-included offense instruction may be given only when, in reviewing the evidence in the light most favorable to the defendant, there is a reasonable basis in the evidence for both acquittal on the greater charge and conviction on the lesser charge. *Id.* (citing *State v. Borrell*, 167 Wis. 2d 749, 779, 482 N.W.2d 883 (1992)). Attempting to make this showing, petitioner argued that even if the jury had rejected his alibi defense, there still was a reasonable basis in the evidence for the jury to acquit him of homicide because Ellis's version of the events was not credible, Ellis had pleaded to a lesser charge in exchange for his testimony, Ellis was in the position to stab the victim, Ellis had a greater motive to do so, and Ellis was willing to use violence. The court rejected all this, noting that petitioner had not introduced any evidence or testimony at trial establishing that Ellis had knifed the victim, instead relying solely on an alibi defense. The court then noted that if the jury had believed petitioner's alibi, then it would have acquitted him of *any* charge. If, however, the jury had rejected petitioner's alibi, for felony murder to attach, the jury then would have to entertain a reasonable doubt that petitioner had be the

8

knife-wielder.  The court found this implausible: by rejecting petitioner's alibi, the jury perforce had concluded that petitioner was present and involved in the crime, as Ellis and Kopp had testified.  According to the court, for the jury then to have entertained a reasonable doubt whether petitioner was the stabber–or to the same effect, to have believed  Ellis was t he stabber– the jury would need to credit only certain parts of Ellis's and Kopp's testimony while at the same time rejecting other parts that had implicated petitioner as the stabber.  The appellate court concluded that no reasonable jury could have made such a distinction in the absence of any affirmative evidence that Ellis actually had been the stabber.  Therefore, the court was satisfied that even if petitioner's trial attorney had sought a felony murder instruction on this alternative ground, the trial court would have denied the request.

Petitioner petitioned the state supreme court for review, raising all of these issues and adding a claim that a juror had been biased against him because he had read newspaper articles about his alleged crimes.  The court reviewed and denied the petition on October 10, 2007.  Dkt. 1, Exh. 7.

IV.  *Knight* Petition

Next, petitioner filed a state habeas petition pursuant to *State v. Knight*, 168 Wis. 2d 509, 520, 484 N.W. 2d 540 (1992), alleging that Ruth had been ineffective for failing on direct appeal to raise these challenges:  1) The prosecutor's use of a peremptory strike against the sole African American juror in the jury pool; 2 ) The prejudicial effect of stricken comments about petitioner's invocation of his right to remain silent; 3) Ellis's credibility; and (4) The court's failure to sever the charges against petitioner and his co-defendant.  In an order entered on February 4, 2008, the

court of appeals found that Ruth's performance had not been deficient under *Strickland* because he had had objectively reasonable grounds for not raising issues Nos. 1,2 and 4 on direct appeal. The appellate court cited the letter that Ruth had sent to petitioner. The court also noted that although Ruth had failed to discuss the issue of Ellis's credibility in his letter, it is well established that credibility determinations are for the jury and do not provide a basis for appeal. Dkt. 13, Exh. 6 (citing *Richards v. Mendivil*, 200 Wis. 2d 665, 670-72, 548 N.W.2d 85 (Ct. App. 1996)).

On reconsideration, the appellate court noted that although statistics show a high racial disparity in Dane County's prison population, "prosecutors may use peremptory strikes to remove potential jurors of any race who have had family members – or have themselves – been prosecuted by the Dane County District Attorney's Office." Dkt. 1, Exh. 9. The state supreme court denied the petition for review on June 10, 2008. Dkt. 13, Exh. 9.

# ANALYSIS

## I. Procedural Default

Before a petitioner may obtain a federal ruling on his claims against a state court conviction, he must (1) exhaust all remedies available in the state courts; and (2) fairly present any federal claims in state court first. *Lemons v. O'Sullivan*, 54 F.3d 357 (7th Cir. 1995). A petitioner has exhausted his state court remedies where he has "no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

However, exhaustion entails more than merely shepherding one's claims through the appropriate paths of state court review; along the way the petitioner also must present his federal claims fully and fairly to the state courts. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir.

10

2001); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."). That is, "[a] petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996) (quotation omitted). In order to meet the "fair presentment" precondition to exhaustion, "[t]he petitioner must have placed both the operative facts and the controlling legal principles before the state courts." *Chambers,* 264 F.3d at 737-38 (internal citations omitted). A petitioner's failure fairly to present his federal claims to the state courts is a procedural default that bars this court from considering the merits of the claims. *Id.*

A petitioner also can procedurally default a federal claim by failing to meet a *state* procedural requirement. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). "A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Id.* (citations omitted). In assessing whether a state court ruling rests upon an "independent and adequate" determination of state law, the federal court must refer to the decision of the last state court to have ruled on the merits. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). A state ground is deemed "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990). A state ground is considered "adequate" only if the state court applies the rule "in a consistent and principled way." *Id.* at 1383. The adequacy of the state ground is a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

11

Petitioner raises ten claims in the instant § 2254 petition.  He asserts that he presented the substance and operative facts of all these claims in the state courts.  This is incorrect: the record reveals that petitioner failed to present *most* of his claims to the state courts in a timely manner. Although petitioner discussed the content of his *Batson*, Fifth Amendment and severance claims (Nos. 1, 4 and 5) in his *Knight* petition on ineffective assistance of appellate counsel, petitioner never had raised these claims directly in the state courts.  Similarly, petitioner did not raise Claim 2 (juror bias) until he filed a petition for review of his § 974.06 motion.  As the state points out in its response, although petitioner discussed one aspect of his co-defendant's antagonistic defense in his *Knight* petition, he never mentioned her DNA defense (Claim 6).  He did not allege that the jury pool failed to represent a fair cross section of the community (Claim 3) until he filed a motion for reconsideration of the denial of his *Knight* petition in the state court of appeals.  Finally, petitioner never raised Claim 7 (ineffective assistance of trial counsel) or a portion of Claim 8 (trial counsel ineffective regarding reckless homicide instruction) in the state courts.  The state asserts that petitioner has procedurally defaulted all of these claims because he failed to properly present them and now is barred from doing so pursuant to the rule set forth in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d at 544 (1992), and Wis. Stat. § 974.06(4).  The state is correct.

Wisconsin's statute governing postconviction motions, Wis. Stat. § 974.06, allows defendants to attack their conviction collaterally on constitutional grounds after the time for seeking a direct appeal or other post-conviction remedy has expired.  However, the defendant is procedurally barred from raising in such a post-conviction motion any claim that he could have raised on direct appeal but did not, unless he has a "sufficient reason." *Escalona-Naranjo*, 185 Wis.

2d at 185; Wis. Stat. § 974.06(4).  Federal courts recognize *Escalona-Naranjo*'s procedural bar as an independent and adequate state law ground to support dismissing claims.  *E.g., Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002); *Hudson v. Grams*, 2008 WL 4498814, *4 (W.D. Wis. Oct. 3, 2008).

Petitioner also has procedurally defaulted Claim 10 because he violate a different state procedural rule.  Although petitioner raised Claim 10 (failure to instruct the jury on felony murder) on direct appeal, the state court of appeals reasonably determined that petitioner had waived this argument by not first raising it in the trial court.  *See Rogers*, 196 Wis. 2d at 827-29. Therefore, this court must defer to the state court's decision as long as it relied on an adequate state law ground.  Wisconsin appellate courts long have held that failure to advance arguments in the trial court waives the right to present them on appeal.  *E.g., State v. Huebner*, 235 Wis. 2d 486, 492, 611 N.W. 2d 727 (2000) ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court"); *Bavarian Soccer Club, Inc. v. Pierson,* 36 Wis.2d 8, 15, 153 N.W.2d 1, 4 (1967) (contemporaneous objection gives trial court opportunity to correct own errors); *State v. Holt*, 128 Wis.2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985) (general rule is that objection not made to trial court is waived).

Once a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice."  *Steward v. Gilmore*, 80 F .3d 1205, 1211-12 (7th Cir. 1996) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  Petitioner blames his procedural default on his appellate counsel, arguing that he should have known to raise all of these issues on

direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (attorney error rising to level of ineffective assistance can constitute cause to set aside procedural default). To make this showing, petitioner must show that his lawyer's failure to raise these issues on appeal fell below an objective standard of reasonableness under prevailing professional norms and that this omission prejudiced him. *Strickland*, 466 U.S. at 668. However, "the assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

Petitioner properly asserted ineffective assistance of his appellate counsel only with respect to Claims 1, 4 and 5. However, as discussed in the next section, the state court of appeals reasonably determined that petitioner's appellate counsel was not ineffective for failing to raise those claims. Therefore, petitioner cannot overcome his procedural default of Claims 1, 4 and 5.

Even if petitioner had properly preserved his other ineffective assistance of appellate counsel claims, he could prevail now only if he established that his appellate counsel had failed to raise an issue that was both obvious and clearly stronger than the issues he did raise. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994)). Petitioner has made no such showing, arguing generally that Ruth was ineffective for failing to raise his remaining claims on appeal. Because petitioner has not developed this argument in any meaningful way, he has waived it. *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, n. 6 (7th Cir. 2002) ("Perfunctory and undeveloped arguments are waived").

In any event, there is no indication that Ruth omitted a significant and obvious issue on appeal or that raising another issue would have resulted in the reversal of petitioner's conviction or an order for a new trial on appeal. *Allen v. Chandler*, 555 F.3d 596, 603 (7th Cir. 2009)

(quoting *Mason v. Hanks*, 97 F.3d 887, 892-93 (7th Cir. 1996) (appellate counsel performance deficient if "significant and obvious issue" omitted and prejudicial if "may have resulted in reversal of the conviction, or an order for a new trial").  These are petitioner's asserted missed claims: juror bias, a non-representative jury pool, lack of a reckless homicide instruction, and ineffective assistance of trial counsel with respect to each of these issues.  Let's examine:

First, petitioner asserts that he had an unfair trial because one of the jurors, Mollenhoff, admitted reading newspaper articles containing prejudicial information about petitioner.  However, contrary to petitioner's assertions, the record shows that the court individually questioned Mollenhoff and determined that he had not formed an opinion about guilt or innocence and would remain impartial.  Petitioner has not adduced any evidence that Mollenhoff failed to do this.  Further, neither defense attorney sought to strike Mollenhoff.

Next, criminal defendants have a Sixth and Fourteenth Amendment right to a jury drawn from a representative cross section of the community.  *Taylor v. Louisiana*, 419 U.S. 522, 528-29 (1974).  "That being said, the United States Constitution does not require that a venire or jury mirror the general population, and a defendant is not entitled to a jury of any particular racial composition."  *Carter v. Hulick,* 2008 WL 361046, *6 (C.D. Ill. Feb. 8, 2008) (citing *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir.1995); *United States v. Tillman*, 2003 WL 22598334, at *1-2 (7th Cir. Sept. 22, 2003)).  In order to establish a violation of this requirement, petitioner must present evidence showing that (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process.

15

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Petitioner has not pointed to anything inherent in the particular jury-selection process utilized in the Dane County Circuit Court and has not otherwise demonstrate any type of systematic exclusion from the jury selection process.  Petitioner shows only that African Americans made up less than one percent of his jury pool.  "The mere observation that a particular group is under represented on a particular panel does not support a constitutional challenge."  *U.S. v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001).  Therefore, any claim based on ineffective assistance of counsel for failing to make such a challenge would be unavailing.

Third, petitioner's distress at the absence of a jury instruction on reckless homicide is unfounded for the same reasons that the state courts deemed unfounded his distress at the lack of a felony murder instruction.  Even if the jury had received a reckless homicide instruction, the evidence would not reasonably support petitioner's acquittal of first degree intentional homicide.  *See* section II.B below for further discussion of the jury instruction issue.

Finally, although Ruth failed to raise on direct appeal any of these claims of ineffective assistance of trial counsel, petitioner did not  not raise this claims in his subsequent § 974.06 motion, in which he alleged other ineffective assistance claims against trial counsel.  Petitioner was well aware of the subject matter of this claim given that he raised it in his petition for review of the denial of the § 974.06 motion to the state supreme court.  The same is true with respect to petitioner's allegations that his trial counsel was ineffective for failing to challenge the *Batson*, biased jury, prosecutorial misconduct and severance issues at trial (Claim 7).  Although petitioner could have included these alleged errors by counsel in his § 974.06 motion, he offers no reason for having failed to do so.

In sum, petitioner cannot overcome his procedural default of Claims 2, 3, 6 and 7; the portion of Claim 8 relating to the reckless homicide instruction; the portions of Claim 9 relating to juror bias, the jury pool and Pauser's antagonistic comments about DNA evidence; and Claim 10.  As a result, these defaulted claims cannot form a basis for federal habeas relief.

## II.  The Merits of Petitioner's Undefaulted Claims

Petitioner properly raised a portion of Claim 8 (trial counsel ineffectively handled the jury instruction on felony murder) in a § 974.06 motion and portions of Claim 9 (appellate counsel ineffective for not appealing *Batson*, Fifth Amendment and severance issues) in a *Knight* petition. Respondent challenges these claims on their merits.

### A.  Legal Standard

Federal courts may grant a state prisoner habeas relief only if the state court's adjudication of the prisoner's claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To grant habeas relief under the "contrary to" clause, a federal court must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001).  To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably extended a clearly

established Supreme Court precedent to a context where it should not have applied or unreasonably refused to extend such precedent to a context where it should have applied. *Jackson*, 260 F.3d at 774. The state court's factual findings are presumed correct unless the petitioner comes forth with clear and convincing evidence showing that the findings were wrong. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).

Honing in a bit, to establish ineffective assistance of counsel in a criminal case, a defendant must prove both that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the attorney's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "bears a heavy burden when seeking to establish an ineffective assistance of counsel claim." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (quoting *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir. 1994)). To satisfy the performance prong of the *Strickland* test, the defendant must identify the acts or omissions of counsel that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690; *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988). A court's review of counsel's performance is highly deferential, presuming reasonable judgment and declining to second-guess strategic choices. *Strickland*, 466 U.S. at 689; *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). To satisfy the prejudice prong of the test, the defendant must establish a reasonable probability that the result of his trial would have been different but for counsel's unprofessional errors. *Strickland*, 466 U.S. at 694; *Moya-Gomez*, 860 F.2d at 764. A "reasonable probability" is a "better than negligible" chance. *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009).

18

**B. Ineffective Assistance of Trial Counsel**

In Claim 8, petitioner argues that his trial attorney was ineffective for failing to present a more persuasive theory in support of his request for a jury instruction on the lesser included offense of felony murder. The state appellate court determined that petitioner could not establish prejudice from any alleged attorney miscues on this issue because the evidence failed to establish that the trial court would have used this instruction based on *any* argument. The court found that petitioner had not introduced at trial any evidence suggesting that Ellis had stabbed the victim, instead relying solely on his alibi defense. Therefore, *arguendo*, the jury would have to have deemed unbelievable Ellis's and Kopp's uncontradicted trial testimony that defendant had admitted stabbing the victim. But because the jury rejected petitioner's alibi, perforce it accepted Ellis's and Kopp's testimony that petitioner had participated in the break-in, which means that it had deemed them credible witnesses. True, a jury can accept part of a witness's testimony and reject the rest, but the appellate court concluded that would be illogical for a jury to draw the stilted and self-serving credibility distinctions advocated by petitioner absent some support in the form of affirmative evidence that Ellis, not petitioner, actually had stabbed the victim. While the court's conclusion is not ineluctable, it is by far the most sensible under the circumstances and therefore it is not subject to second-guessing by a federal court during a § 2254(d) review employing the deferential *Strickland* standard.

Petitioner suggests that in any event, he was entitled to the lesser-included offense instruction because the elements of felony murder are a subset of first degree intentional homicide. *See* Wis. Stat. §§ 940.01(1) (2001) (causing death with intent to kill) and 940.03 (2001) (causing death while committing or attempting to commit a crime). The Supreme Court has held that a

defendant is entitled to an instruction on a lesser included offense only "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208 (1973); *see also Armstrong v. Bertrand*, 336 F.3d 620, 625 (7th Cir. 2003) (citing same in § 2254 case).  The same rule applies in Wisconsin.  *Nichols v. Gagnon*, 710 F.2d 1267, 1269 (7th Cir. 1983); *State v. Wilson*, 149 Wis. 2d 878, 898, 440 N.W.2d 534 (1989); *Leach v. State*, 83 Wis. 2d 199, 216-17, 265 N.W.2d 495, 503 (1978).  In this case, even though the jury could have found the elements of felony murder satisfied–after all, it *is* a subset of the murder charge of which the jury convicted petitioner–the court of appeals found that the evidence would not permit a rational jury to acquit petitioner of first degree intentional homicide.  As already discussed, Ellis and Kopp both testified that petitioner admitted stabbing Hachmeister and there was no evidence from any source suggesting otherwise..

Finally, Petitioner argues that because the trial court found the evidence sufficient to warrant the felony murder instruction for his co-defendant at trial, the court should have given the instruction for him as well.  This is a non sequitur.   Pauser was in the car at the time the victim was stabbed.  Petitioner was in the victim's bedroom then came back to the car and announced that he had stabbed him.  In sum, it was reasonable for the appellate court to conclude that the trial court would not have given petitioner the felony murder instruction regardless of which argument his attorney made.  As a result, trial counsel's failure to present this argument at trial could not have prejudiced petitioner.

### C.  Ineffective Assistance of Appellate Counsel

In Claim 9, petitioner contends that attorney Ruth was ineffective on appeal because he failed to raise the *Batson*, prosecutorial misconduct and severance issues.  The court of appeals found that attorney Ruth's performance was not deficient under *Strickland* because he had objectively reasonable grounds for not raising these issues.  The court cited Ruth's letter to petitioner in which he explained:  1) the state had a race-neutral reason for striking the African American juror,; 2) the prosecutor's comment on petitioner's exercise of his right to remain silent would be·viewed as harmless error given its brevity and the court's immediate curative instruction; and 3) there was no constitutional confrontation problem requiring severance because all of the co-defendants testified and were cross-examined.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Against this standard, let's review petitioner's contentions:

#### (1) *Batson*

Petitioner contends that his appellate attorney should have claimed an Equal Protection Clause violation because the state struck the only African-American juror from the venire panel, thereby violating *Batson v. Kentucky*, 476 U.S. 79 (1986).  *Batson* holds that a prosecutor is forbidden from challenging potential jurors solely on the basis of race or assumptions about black jurors as a group.  *Id*. at 89.  It established a three-part framework for determining whether discriminatory intent improperly influenced the exercise of a peremptory challenge.  *U.S. v. Stephens*, 514 F.3d 703, 710 (7th Cir. 2008).  First, the defendant must show that the totality of

the relevant facts gives rise to an inference of discriminatory purpose. *Batson*, 476 U.S. at 93-94. Then the prosecutor must offer race-neutral explanations for his peremptory challenges. *Id.* at 97. Even a silly or unreasonable motivation will suffice so long as it is race-neutral. *Purkett v. Elem*, 514 U.S. 765, 769 (1995). Third, the defendant may argue that the stated reasons are pretextual before the trial court makes a final determination. *Batson.* 476 U.S. at 98. At the third step, the persuasiveness of the prosecutor's justification becomes relevant. *Purkett* 514 U.S. at 768.

"[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768. "*Batson* and its progeny direct trial judges to assess the honesty—not the accuracy—of a proffered race-neutral explanation." *Stephens*, 514 F.3d at 711 (quoting *Lamon v. Boatwright*, 467 F.3d 1097, 1101 (7th Cir. 2006), and citing *Purkett*, 514 U.S. at 769; *Hernandez*, 500 U.S. at 365; *United States v. George*, 363 F.3d 666, 674 (7th Cir. 2004)).

Petitioner's appellate attorney, reasoned that a *Batson* challenge would be futile because the prosecutor had a race-neutral reason for striking the sole black juror. Petitioner deems this unsatisfactory, arguing that counsel could have shown pretext. Petitioner points to two jurors who either had been arrested or had relatives in prison. But the jurors to whom petitioner refers, Miller and Stevens, were struck by the court for cause. The prosecutor never had the opportunity to exercise peremptory strikes against them. No other juror remaining on the jury had an extensive connection to the Dane County District Attorney's Office. The voir dire transcript reveals nothing to indicate that the prosecutor's race-neutral reason for striking Anderson-Ingram was not genuine. Therefore, it was reasonable for the state appellate court to find that attorney Ruth was not deficient for failing to raise the *Batson* issue on appeal.

**(2) Fifth Amendment**

Petitioner asserts that attorney Ruth failed to argue on appeal that the state violated his rights under the Fifth Amendment and deprived him of the right to a fair trial when the prosecutors implied that he was guilty because he had invoked his right to remain silent following his arrest.  The state court of appeals accepted Ruth's explanation that he did not raise this issue because the prosecutor's comment on petitioner's exercise of his right to remain silent would be·viewed as harmless error given its brevity and the court's immediate curative instruction.

The Fifth Amendment provides the right to remain silent after arrest[1] and precludes a prosecutor from commenting on the silence of a defendant who asserts this right.  *Doyle v. Ohio*, 426 U.S. 610, 614 (1976); *Griffin v. California*, 380 U.S. 609, 614 (1965).  However, only those "comments that suggest a defendant's silence is 'evidence of guilt'" are prohibited.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (citing *Griffin*, 380 U.S. at 615, and citing *United States v. Robinson*, 485 U.S. 25, 32 (1988)).  In this case, one prosecutor made a general and indirect reference to petitioner choosing to keep his mouth shut during the course of the investigation.  The second comment was more direct, emphasizing that petitioner chose to stand on his rights to remain silent and make the police find the evidence against him.  The court provided a curative instruction following only the second comment.  Although the prosecutors referred to the fact that petitioner did not talk to police, they did not ask the jury to draw an adverse inference from that fact. *Aleman v. Sternes*, 320 F.3d 687, 689 (7th Cir. 2003) ("Reminding jurors of something

---

[1]  To the extent that the prosecutors' statements could be interpreted as referring to petitioner's pre-arrest silence, this would not violate petitioner's constitutional rights.  *See Jenkins v. Anderson*, 447 U.S. 231, 238-240 (1980).

23

they already know . . . could be a back-door invitation to draw the forbidden inference, but when it is not there is no constitutional problem."). The prosecutors' remarks were meant to show that petitioner had been uncooperative and therefore was not credible. Such references to petitioner's silence are not unconstitutional. *Portuondo*, 529 U.S. at 69 (prosecutor's comments that defendant had the benefit of just sitting back and listening to other witnesses before he testified not unconstitutional because they concerned defendant's credibility as trial witness).

Even if these statements were viewed, *arguendo*, as having improperly invited the jury to infer guilt, the court sustained the objection to the more pointed of the two comments and instructed the jury not to draw any inference of guilt from petitioner's silence. The court's curative instruction neutralized any improper inference of guilt. *Greer v. Miller*, 483 U.S. 756, 764 (1987); *Aleman*, 320 F.3d at 689.

The prosecutors' comments did not constitute a *Doyle* or *Griffin* violation, but petitioner suggests that the prosecutors may have attempted to violate the rule by referring to petitioner's silence in the presence of the jury. *See Greer*, 483 U.S. at 765. Although prosecutorial misconduct may 'so infect a trial as to render the resulting conviction a denial of due process, the misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *Id.* Ruth deemed the comments harmless given the trial court's instruction, and the state court found that this was a fair assessment. This was a reasonable conclusion. *See id.* at 766; *Bartlett v. Battaglia*, 453 F.3d 796, 802 (7th Cir. 2006) (prosecutorial misrepresentations do not have same force as court instruction and must be judged in context in which made). Here, the prosecutors made two quick references to petitioner's silence during closing arguments, defense counsel immediately objected and the trial court gave a curative instruction. These facts, coupled with

24

the overwhelming evidence of petitioner's guilt, establish that the outcome of the trial would not have been different absent the remarks.  *Brecht v. Abrahamson*,[2] 507 U.S. 619, 638-39 (1993) (on habeas review, inquiry is whether, in light record as a whole, state's improper use of post-*Miranda* silence "had substantial and injurious effect or influence in determining the jury's verdict.").

### (3) Severance

Petitioner asserts that appellate counsel should have challenged the trial court's denial of his motion to sever his trial from co-defendant, Pauser because at trial, the prosecution admitted several of Pauser's self-incriminating statements into evidence.  Petitioner argues that without a curative instruction, the statements were prejudicial because they corroborated Ellis's and Kopp's testimony that he participated in the robbery and killing.  Ruth told petitioner that he did not raise this issue on appeal because there was no constitutional confrontation problem: all of the co-defendants testified and were available for cross-examination.

Petitioner points to a case in which the court stated that "[a] defendant might be prejudiced if the jury heard evidence admissible against only one defendant, which would be inadmissible against him were he tried alone." *Johnson v. Bett*, 349 F.3d 1030, 1036-37 (7th Cir. 2003).  However, the court further noted that "[w]hether it was error to admit the statement under the Wisconsin evidentiary rule is not our concern. . . . the Supreme Court has made clear that federal habeas corpus does not reach errors of state law." *Id*. at 1037 (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)).  The concern at the federal level is whether admission of the evidence was so unfair as to violate of the due process clause or the confrontation clause.  *Id.*

---

[2] *Brecht* standard applies because the state court essentially concluded that no constitutional error occurred and never conducted a harmless error analysis. *Johnson v. Acevedo*, 572 F.3d 398, 404 (2009) (citing *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

Although Pauser's out-of-court statements may have implicated petitioner indirectly, petitioner had the opportunity to examine her about those statements. *Id.* (citing *California v. Green*, 399 U.S. 149 (1970); *Kentucky v. Stincer*, 482 U.S. 730 (1987); *Nelson v. O'Neil*, 402 U.S. 622 (1971) ("Even when presumptively unreliable hearsay is admitted as substantive evidence, there is no violation [of the Sixth Amendment] so long as the declarant testifies as a witness and is subject to cross-examination"). Throughout her testimony, Pauser insisted that she and petitioner had no involvement in the crime. This might seem like a net gain in petitioner's cost/benefit ledger, but now he criticizes his trial attorney for relying only on Pauser's cross examination and not renewing the severance motion. However, "counsel's decision to use cross-examination to alleviate the . . . testimony did not constitute 'representation [that] fell below an objective standard of reasonableness.'" *Moore v. Casperson*, 345 F.3d 474, 490 (7th Cir. 2003) (citing *Strickland*, 466 U.S. at 687-88). "*Strickland* permits counsel to make strategic decisions and this decision appears to fit well into that category." *Johnson*, 349 F.3d at 1037.

Joining defendants rises to the level of a due process violation only if it results in substantial prejudice to a defendant. *Id.* (citing *United States v. Lane*, 474 U.S. 438 (1986)). Generally, "when a single crime is committed against a single victim in a single series of events by several defendants, a joint trial is not only acceptable but is desirable to promote greater reliability and consistency in the verdicts." *Id.* (citing *Buchanan v. Kentucky*, 483 U.S. 402 (1987)). This is not a case in which petitioner was the less culpable defendant and risked being found guilty by association with Pauser. *See* 1A Wright & Miller, *Federal Prac. & Proc. Crim. 3d* § 223 (2009). The defendants planned the robbery together, faced the same charges and were both found guilty of first degree intentional homicide. The bulk of the evidence was relevant to both of them. Moreover, Pauser's direct testimony benefitted petitioner by bolstering his alibi.

26

Petitioner maintains that the prosecution obtained an indirect benefit from Pauser's out-of-court statements because they suggested that petitioner's alibi was a lie.  Given the strength of the state's evidence against petitioner, there is no reasonable probability that petitioner would have been acquitted if he had been tried separately from Pauser.  Pauser's statements implying that petitioner was present during the crime were duplicative of and far less incriminating than Ellis's and Kopp's testimony that petitioner participated in the robbery, returned to the car after Ellis with a bloody knife and reported having stabbing the victim seven times.

It was reasonable for the state appellate court to conclude that it was not ineffective assistance for attorney Ruth to decide not to appeal severance.  Because petitioner has not shown that he had cause for his procedural default of his claim related to severance, I am recommending that it be denied.

## III. Cumulative Error

Finally, in his brief in support of his petition, petitioner argues that the cumulative effect of the trial court's and his attorneys' alleged errors denied him a fair trial.  Because petitioner did not raise such a claim in his petition or in the state courts, he has defaulted it.  However, for completeness sake, I note that petitioner cannot prevail on a cumulative error claim.

Cumulative errors, even if harmless individually, conceivably could prejudice a defendant as much as a single reversible error, and therefore could violate the defendant's right to due process of law.  *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) (citing *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978); *United States v. Haddon*, 927 F.2d 942, 949-50 (7th Cir. 1991)).  However, to demonstrate cumulative error, petitioner must establish that at least two errors were committed in the course of the trial and that when considered together along with the entire record, these

27

errors so severely infected the jury's deliberations that denied petitioner a fundamentally fair trial. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). Courts will consider only plain errors or errors which were preserved for appellate review. *Id.* at 825. As discussed above, petitioner has failed either to establish that any error occurred at trial or to preserve claims of such errors for appellate review. Further, even assuming *arguendo* that petitioner has established two trial errors, it is clear from the lengthy and methodical discussion above that petitioner suffered no prejudice. He received a fair trial and was adequately represented by counsel in trial and on appeal. Accordingly, petitioner is not entitled to habeas relief from this court.

### RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the petition of Jeremy T. Greene for a writ of habeas corpus be DENIED.


Entered this 26th day of August, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

August 26, 2009

Jeremy T. Greene
Reg. No. 288582
Green Bay Correctional Institution
P.O. Box 19033
Green Bay, WI 54307-9033

Aaron R. O'Neil
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707

Re:___Greene v. Pollard
        Case No. 08-cv-623-slc

Dear Mr. Greene and Attorney O'Neil:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before September 11, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by September 11, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

 /s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

29

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**